UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

UNITED STATES OF AMERICA )   CASE No. 07 CR 772
                        )
                        )
                        )
V.                      )   Judge: Virgina M. Kendall
                        )
                        )
JASON FOSTER            )
                        )
                        )

FILED
AUG 21 2008
AUG 21 2008
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

DEFENDANT'S, MEMORANDUM CONCERNING KIMBROUGH AND GALL/3553 (a) MITIGATING FACTORS

ALL COCAINE IS EQUAL: POST-BOOKER SENTENCING PURSUANT TO 3553 REQUIRES THE COURT TO CONSIDER MANY FACTORS, BUT KIMBROUGH EFFECTIVELY ENCOURAGES THE COURT TO IGNORE THE PURPORTED 100:1 DISTINCTION BETWEEN POWDER AND CRACK COCAINE.

In Kimbrough V. U.S., 128 S. Ct. 558 (decided Dec.10,2007), justice Ginsburg, writing for the majority of the court, effectively and persuasively accepted the Sentencing Commissions comprehensive arguments: 1.) the guidelines 100:1 powder to crack ratio was unjust; excessively punitive and racially discriminatory, District judges are no longer required to shackle defendants with this 100:1 ratio, which is not justified by the relative harmfulness of these two versions of the same drug, is inconsistent with the goal of punishing major drug dealers more severely, 2.) and does not foster respect for the law because of the widely held (and accurate) perception that it promotes sentencing disparities based on race. Kimbrough, slip opinion at 25-26. The Kimbrough majority also rejected each of the governments arguments that the district courts should not be permitted to reject Congressional policy underlying the 100:1 ratio as incorporated into 841.

Of course, by the statue, the court in sentencing JASON FOSTER, must consider seven (7) factors (if seriously raised) including the nature and circumstances of the offense (3553 (a) (1)): the seriousness of the offense (3553 (a) (2) (A)): and the need to avoid unwarranted disparity among defendants with similar records who have been found guilty of "similar conduct" (3553 (a) (6)). And the court must endeavor to promote respect for the law (3553 (a) (2) (A)). Crack is not more serious than powder, and selling crack is not a basis for a disparately higher sentence, as the conduct is essentially "similar" to selling powder. Further, disrespect for the law is the by-

product of the 100:1 ratio because, in the aggregate, it results in much more severe sentences being imposed upon minorities for distributing cocaine. The Supreme Court and the Sentencing Commission have done all that they can to move to a principle of parity. The Commission has now amended the cocaine base guidelines (2D1.1), reducing the applicable offense levels ( and thus the penalty ) for cocaine base in the form of crack. 3) Congress implicity approved in the ratio, "reduction", and the court in Kimbrough noted that while it usually doesn't read anything affirmative into congressional inaction, here it was reasonable to take its failure to veto the recent amendments as constituting approval:

> Congress, however, did not approve or modify the Commission-initated 2007 amendment ordinary, we resist reading congressional intent into congressional action. See Bob Jones Univ. V. United States, 461 US 574, 103 S.ct 2017, 76 L.Ed. 2d 157(1983). But in this case, congress failed to act on a proposed amendment to the Guidelines in a highprofile area in which it had previously exercised its disapproval authority under 28 U.S.C. 994(p) If nothing else, this tacit acceptance of the 2007 amendment undermines the Government's position, which itself based on implactions drawn from congressional silence, Kimbrough, slip opinion at 40.

EVEN BEFORE KIMBROUGH, AS DEFENDANTS HAVE ARGUED, THIS COURT WAS REQUIRED TO CONSIDER THE SERIOUSNESS OF THE OFFENSE AND THE NATURE OF THE CONTRABAND.

Before Kimbrough, the 7th Circuit's position was that a district court could not catagorically reject the 100:1 ratio but could consider the nature of the contraband. United States V. Jointer, 457 F3d. 682 (7th Circuit 2006). In Jointer, the 7th Circuit expressly permitted the court to consider, under 3553(a), the Defendant-specific facts relevant to the nature and seriousness of the offense without regard to the 100:1 ratio.

IN THE SUPREME COURT AND THE SENTENCING COMMISSION'S VIEW, THE CRACK GUIDELINES ARE NOT CONSISENT WITH THE MANDATORY SENTENCING POLICIES

DEFINED BY CONGRESS IN 3553.

The United States Attorney's consistent posture of urging the district court to stick within the guidelines makes some sense in promoting uniform sentences where the guidelines were derived from empirical data on sentencing patterns. However, that was not how the crack guidelines were created. Justice Ginsberg's opinion makes it quite clear that the crack guidelines were not based on past sentencing patterns:

"In the main, the Commission developed Guidelines sentences using an empirical approach based on data about past sentencing practices, including 10,000 presentence investigation reports. See U.S.S.G. 1A1.1, intro.comment, pt. A. p3. The Commission 'modified and adjusted past practices in the interests of greater rationally, avoiding inconsistency, complying with congressional instructions, and the like.' Rita V. United States, 551 US __, 127 S.ct. 2456, 168 L.Ed 2d 203, 213 (2007). The Commission did not use this empirical approach in developing the Guidelines sentencing for drug-trafficking offenses. Instead, it employed the 1986 Act's weight-driven scheme.

Kimbrough, slip opinion, pages 23-4.

There is no reasoned basis for the 100:1 ratio. It was fashioned largely by a congressional over-reaction to certain sensational news stories concerning an athlete's death and fears of the harm to society flowing from crack's distribution and use. Although, bills are pending congress still has not acted to remove the statutory minimums that impose the same 5 year and 10 year minimum sentences for powder cocaine and 1/100th the amount of crack. Crack defendants are still subject to protracted punishment under this rule. Politicians, have always gained votes by being tough on crime, 5) but 841 goes further and is, as implied, excessively tough on African Americans and Hispanic criminals. Congressional failure to act to correct this documented discriminatory impact is unconscionable; and, as discussed below, contrary to fundamental principles of equal protection guaranteed under the constitution.

(3)

PRINCIPLES OF DUE PROCESS AND EQUAL PROTECTION REQUIRE THIS COURT, IN EVERY CASE, TO SENTENCE USING THE STATUTORY MINIMUMS FOR POWDER COCAINE, BUT TO DISREGARD THOSE FOR COCAINE BASE.

Section 3553 specifically requires thye court to endeavors to promote respect for law, and, of course, this is the court's general duty. However, the Constitution flatly prohibits discrimination on the basis of race. Yet, as applied, the Controlled Substance Act, and in particular 21 U.S.C. 841, punishes minorities much more severly for essentially the same conduct distributing cocaine or its equivalent cocaine base. This is the denial of due process. " The promise of equal protection of the laws is not limited to the enactment of fair and impartial legislation, but necessarily extends to the application of these laws. United States V. Falk, 479 F2d 616 (7th Circuit 1973). The basic principle that laws can not be discriminatorily applied against one minority was established long ago in Yick Wo V. Hopkins, 118 US 356 (1886), a case involving systematic denial of permits to San Francisco's Chinese Laundry Operators-but not to their Caucasion competitors. A unanimous court said,

"Though the law itself be fair on its face and impartial in appearance, yet, if it is applied and administered by public authority
> with an evil eye and an unequal hard, so as practically to make unjust and illegal discriminations between persons in similar circumstances, material to their rights, the denial of equal justice is still within the prohibition of the Constitution".
> Yick Wo at 373-374.

The Court set aside, the permit violation convictions against the Chinese Laundry Operators, The Constitution protects the right of every citizen (and, in Yick Wo, resident alien) to due process and and equal protection, regardless of race or gender. Punishing members of a minority much more severly for essentially the same conduct is abhorant to the principle of equal justice under the law. Yet, that is how the statutory minimums work. It may be that the applicable statutory minimums would not change for any defendant in the present case - if the amount of crack attributable to each defendant were deemed to be powder - but if it does, this court should sentence the defendants under 3553 and should adhere to the statutory minimum sentences proscribed by Congress for powder cocaine.

GALL, DECIDED THE SAME DAY AS KIMBROUGH, BUT GIVES VERY BROAD DIS-
CRETION TO SENTENCE WITHOUT REGARD TO THE 100:1 RATIO.

    Gall V. United States, No. 06-7949, decided Dec. 10,2007, makes
clear that the district Court has very wide discretion in sentencing
the defendants under 3553, and the extraordinary reasons need not be
given to justify a sentence outside the Guidelines. Proportional
Justification ( more and better reasons being required for greater
variances from the guideline sentence) is consistent with Booker's
remedial holding. The Standard whether the sentence selected by the
Courts is within, without, or way outside the advisory guideline range.
    Gall V. United States, No. 06-7949, clearly states: Even though
Gall is meant for appellate review it does not give the District Court
some guideance. A couple of examples that the Supreme Court gives
are as follows: " The Sentencing Judge is in a _Superior_ position to
find the facts and judge their import under 3553(a) in the individual
case. The Judge sees and hears the evidence, makes credibility
determinations. Has full knowledge of the facts and gains insight
not conveyed by the record." "The Sentencing Judge has access to,
the greater familiarity with, the individual case and the individual
defendant before him than the Commission or the appeals Court."
"District Courts have an institutional advantage over Appellate Courts
in making these sorts of determinations, especially as they see so
many more Guideline Sentences than Appellate Courts do." This basically gives
the District Court discretion to form a sentence outside the guide-
line range and as long as he gives his reasons it should be review
for abuse of discretion. A major component of the decision is that
the farther a Judge deviates from the guideline range he does not
have to justify it with "_extraordinary_" circumstances or use a
rigid mathematical formula.

    See United States V. Wachowiak, 496 F3d 744 (7th Circuit 2007).
The Appeals Court held that sentence was not unreasonably lenient.
The District Court uses various 3553 factors to impose a below the
guideline sentence. It also gives examples to help illustrate the
limits of Booker sentencing discretion in the 7th Circuit. See United
States V. Ngatia, 477 F3d 496 (7th Circuit 2007). The District Court

findings support the below-range sentence, resulting in a reasonable sentence. We find that the Court did not err. See also, United States, V. Rios, 128 S.ct. 876 (7th Circuit 2008). Which held that sentencing Courts are free to consider the disparity in guidelines sentences between offences involving Crack and Powder Cocaine.

THE 100:1 CRACK TO POWDER COCAINE RATIO IS NO LONGER MANDATORY, KIMBROUGH V. UNITED STATES, 128 S.ct. 558 (decided Dec. 10, 2007).

A Judge can use 3553 Sentencing Factors to deviate from this ratio. The ratio, like the rest of the guidelines was rendered advisory by the decision in Booker. The Court seems to agree with the United States Sentencing Commission that Crack and Powder Cocaine are two forms of the same drug, the active ingredient is the same in both. The two forms of the drugs have the same physical and mental effects. The Commission later determined that the concerns about Crack babies, violance from Crack offenders were inflated, and the epidemic of Crack cocaine use by youth never materialized. For all of these reasons it should be wise decision to argue that the ratio should be 1:1 and it should "survive" Appellate review. There is a recent report called, " The Vortex: The Concentrated Racial Impact of Drug Imprisonment and the Characteristics of Punitive Countries." It basically says that though there are nearly 20 million illict drug users in the United States, the drug laws are selectively enforced primarily on minorities and the poor. This can be further used to argue the 1:1 ratio.

(See Concession by Solicitor General before the Supreme Court in oral argument on Feb 20, 2007 in Rita V. United States at transcript pg 34-35 (under Booker), "a judge does have a certain amount of freedom in an advisory guidelines system to disagree with what the Sentencing Commission has found."

\*\*\*\* ( Cases that called for the 20 to 1 ratio ) \*\*\*\*

United States V. Perry, 389 F.Supp 2d 278 (D.R.I. 2005)
United States V. Leroy, 373 F.Supp 2d 887 (E.D. Wisc. 2005)
United States V. Beamon, 373 F.Supp 2d 878 (E.D. Wisc 2005)

United States V. Wallace, 458 F3d 606, 611 (7th Cir. 2006)
United States V. Jointer, 457 F3d 686-87 (7th Cir. 2007)
        **** ( Cases that called for 10 to 1 ratio ) ****
United States V. Fisher, WL 2542916 (S.D.N.Y. Oct 11, 2005)(unpub)

## ADDITIONAL SUPPORTING FACTS

My name is Jason Terry Foster. I was born, October 7, 1972 at Copley Memorial Hospital in Aurora, Illinois. I was raised by the late Billie Gene Foster Sr., (GrandFather), Ilene Foster (GrandMother), Diane Davis (Mother) and Milton Lee Davis(Step Father). I grew up all the way from an infant to adolesence, to my Adult years in Aurora. I have two sisters on my Mother's side. Jashia Tyann Foster, 31 and Anntoinette Nicole Davis, 27. I also have 3 brothers and two sisters by my biological father, DonnTerry Jackson\ Their names are KC Turner, Mario Stewart, Bryon Ruff, my sister names are Teri Jackson, and Quana Jackson. I grew up around a crime infested area which involves around drugs, gangs, prostitution, and corruption. I have experience tragic deaths in my family that has been detrimental to me. At the age of 15 my Mom's Mother (Ilene Foster) died of cancer, on Sept of 1988. Five years later my Mom's Father (Billie Gene Foster) was brutally stab to death, him and his female companion Maria in which my Uncle (Billie Mays Foster, Jr.) and I found him in his home in Aurora, Illinois. He died in Sept of 1993. Then my Mother (Diane Davis) passed away April of 1995 of Seizure attack in which I wasn't present due to incarceration. And within the past two years, I have lost two Grand Uncles to diabetes to whom I was close to, my StepFather, my Mother's Husband in 2007 and most recently my Uncle Tommy Foster ( Mom's Brother) on Tuesday, August 5, 2008 of brain cancer.

I was 22 years old when my Mom died, I was 20 years old when I found my GrandFather murdered. I am the oldest out of my sisters and brothers. And I've been on my own as a youth, along with my four kids, I have 3 girls and 1 boy.

See also, U.S. V. Collington, 461 F3d 805 (6th Cir. 2006)(in drugs and gun case where guidelines 188-235, sentence of 120 months affirmed in part because of "the early deaths of [defendant's] parents" where father was murdered when defendant 9 and mother died soon after).

Conclusion:

Kimbrough and the sentence Commission's 2007 Report strongly support the presumption that whether a defendant is guilty of selling a given amount of cocaine powder or the same amount of cocaine base in the form of crack should make no difference to the severity of the sentence imposed under 3553. Kimbrough's holding requires the court to start from the premise that all cocaine is equal, and that absent a showing by the government, which it failed to make in Kimbrough, the operative sentencing principle should be that selling either form of cocaine deserves the same punishment, subject of course to all the considerations now appropriate under 3553. Gall, makes clear that court's imposition of a sentence is now subject to a deferential abuse of discretion review standard. Finally the responsibility and authority to impose just sentences has been returned to, the district court, aided by the advise and expertise of the Sentencing Commission and, in this case by the Commissions 2007 Report on crack, documents the unjust, racially discriminatory impact of the 100:1 ratio.

X _____

_____
KERMIT MOORE, CASE MANAGER
AUTHORIZED BY ACT OF 7-7-55,
AS AMENDED TO ADMINISTER OATHS
(_____ 4004)

(8)

<u>CERTIFICATE OF SERVICE</u>

On August 15, 2008, the undersigned filed the above with the Clerk a copy of the following to opposing counsel, Bethany K. Biesenthal, AUSA, 219 S. Dearborn St., Suite 500, Chicago, Illinois 60604, by First Class Mail, Postage Prepaid.

x _Yvson Terry Foster_ (signature)

Date this 15th day of August, 2008.

KERMIT MOORE, CASE MANAGER
AUTHORIZED BY ACT OF 7-7-55,
AS AMENDED TO ADMINISTER OATHS
(18USC 4004)

(9)